**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

**JONIA MILBURN, individually and as Administrator of the Estate of Christon Collins, deceased,**

**Plaintiff,**

**v.**

**SHERIFF MELODY MADDOX, in her individual capacity, DETENTION OFFICER J. STAFFORD, in her individual capacity, DETENTION OFFICER TELFORD, in her individual capacity, DETENTION OFFICER A. JIMOH, in his individual capacity, EMT K. LAWRENCE, in his individual capacity, and ARMOR HEALTH OF DEKALB COUNTY, LLC,**

**Defendants.**

**CIVIL ACTION FILE**

**NO. 1:25-CV-6012-MHC**

# ORDER

This case comes before the Court on Defendant Sheriff Melody Maddox ("Maddox")'s Motion to Dismiss ("Maddox's Mot.") [Doc. 25] and Defendant Detention Officer A. Jimoh ("Jimoh")'s Motion to Dismiss Plaintiff's Amended Complaint ("Jimoh's Mot.") [Doc. 26].

# I. BACKGROUND[1]

Plaintiff Jonia Milburn, the surviving mother of Christon Collins ("Collins"), brings this action in response to her son's alleged wrongful death while housed as a pretrial detainee at the DeKalb County, Georgia, Jail (the "Jail"). Am. Compl. ¶¶ 3-4, 34.

## A. Facts Related to Collins's Death

At some point before March 13, 2024, Collins was given fentanyl at the Jail, "where drugs were rampantly distributed and used." Id. ¶ 36. At approximately 4:10 p.m. that day, Defendant Detention Officer Telford ("Telford"), who was solely in charge at the guard tower with cameras that monitored Collins's cell area, witnessed "Collins stumbling and unable to control his bodily movements in the 6 Southwest-200 Pod for thirty minutes or more." Id. ¶¶ 38-39. About ten minutes later, Telford saw Collins collapse near the telephones in Pod 200. Id. ¶ 40. Although Jail policy required Telford to conduct security checks and to report all unusual activity, she did not report Collins's collapse. Id. ¶¶ 42-43. For at least

[1] Because this case is before the Court on motions to dismiss, the facts are presented as alleged in Plaintiff's Amended Complaint for Damages ("Am. Compl.") [Doc. 19], which is the operative pleading in this case. See Johnson v. City of Atlanta, 107 F.4th 1292, 1297 (11th Cir. 2024) ("For both 12(b)(6) and 12(c) motions we accept the facts in the complaint as true and view them in the light most favorable to the plaintiff.").

three hours, while Collins laid on the floor "in dire medical condition[,]" Telford did not administer Narcan,[2] call for help, or otherwise provide aid to Collins. Id. ¶¶ 44-45.

Around 7:10 p.m., Defendant Detention Officer Stafford ("Stafford") assumed responsibility for monitoring the unit, where Collins remained motionless in the dayroom. Id. ¶ 46. For approximately forty-two (42) minutes, while Collins was lying limp and "in obvious medical distress[,]" Stafford did not provide "any hands-on lifesaving measures or Narcan" to Collins. Id. ¶ 49. Instead, she watched Collins "for two and a half minutes . . . lie on the floor without movement, changing skin color, and limp, while inmates crowded around him." Id. ¶ 50. At 7:39 p.m., as inmates continued to crowd around Collins's body, Stafford asked, "Does he need medical?" Id. ¶ 52.

At approximately 7:37 p.m., inmates told Detention Officer Jimoh, who was walking around the pod conducting meal rounds, that Collins was not moving and needed medical attention. Id. ¶ 51, 54. Despite being informed of Collins's unresponsiveness and noticing his limp body, changing skin color, and cooling

[2] Narcan is a medication used to reverse opioid overdoses. United States v. Parsons, No. 23-14097, 2024 WL 4719264, at *1 (11th Cir. Nov. 8, 2024).

body, "Jimoh did not check for a pulse, did not retrieve an AED,[3] did not administer Narcan, and did not retrieve [an] AMBU bag[.]"[4] Id. ¶ 55. At that same time, Jimoh yanked Collin's arm for about ten seconds and observed no movement in his chest. Id. ¶ 57. Jimoh also struck his baton on the floor near Collins, who did not respond. Id. ¶ 59.

At 7:39 p.m., Jimoh walked "without any speed" to the nearby guard tower and asked Stafford to "make a 'signal 2' (man down) call for him." Id. ¶ 60. Stafford told Jimoh that she previously asked other inmates about Collins's welfare but "did not escalate the situation." Id. ¶ 62. For the next several minutes, Jimoh walked between the guard tower and dayroom door and in Collins's cell without administering emergency aid. Id. ¶¶ 64-66. Around 7:44 p.m., Jimoh told Stafford

---

[3] An AED is an automated external defibrillator, a portable device used to treat sudden cardiac arrest. See Dorland's Illustrated Medical Dictionary 34 (Douglas M. Anderson et al. ed., 30th ed. 2003); Stalley v. Cumbie, 124 F.4th 1273, 1277 n.5 (11th Cir. 2024) ("An AED is a portable device that can monitor a heart rhythm, diagnose certain heart issues, and deliver an electric shock to treat cardiac arrest and restore a normal rhythm.").

[4] An artificial manual breathing unit ("AMBU") bag is a handheld tool used to deliver ventilation to a patient who is not breathing. See Cedar Rapids Cmty. Sch. Dist. v. Garret F. ex rel. Charlene F., 526 U.S. 66, 69 (1999) (describing "AMBU bagging"); see also Anesthesia General, AMBU Ventilation, https://anesthesiageneral.com/ambu-ventilation/ (last visited Sept. 14, 2026).

in the guard tower that Collins was "lying on the floor and unresponsive[.]" Id. ¶ 67.

Around 7:45 p.m., medical assistance arrived, and Jimoh told Defendant EMT Lawrence ("Lawrence") that Collins was unresponsive. Id. ¶ 70. Neither Jimoh nor Lawrence immediately performed CPR, administered Narcan, or obtained an AED or AMBU bag to aid Collins. Id. ¶ 71. Collins was placed on a stretcher about two minutes later (7:47 p.m.) and was transported toward the Jail's third-floor medical clinic. Id. ¶ 72. Approximately two minutes later (7:49 p.m.), Lawrence placed a pulse oximeter on Collins, which indicated that Collins had no pulse or oxygen saturation. Id. ¶ 73. Despite that reading, Jimoh and Lawrence continued transporting Collins to the clinic without immediately performing CPR or using an AED, administering Narcan, or deploying other lifesaving equipment. Id. ¶¶ 74-76. When they reached the clinic around 7:52 p.m., nurses began CPR and used an AED on Collins. Id. ¶ 77. For the next several minutes, Jail medical staff worked to resuscitate Collins and prepare him for transport to the hospital. Id. ¶¶ 81-83.

Collins was taken by ambulance to Emory Hospital, where he was admitted to the ICU "in critical condition with cardiac arrest, concern for anoxic brain injury, epistaxis, acute respiratory failure, gastrointestinal bleeding, and acute

kidney injury[.]" Id. ¶ 85. He died two days later from "acute lethal cardia arrhythmia complicated by acute pneumonia/sepsis/acute liver failure/anoxic brain injury." Id. ¶¶ 87-88. Plaintiff alleges that Collins's death resulted from the prolonged delay in initiating basic lifesaving measures. Id. ¶ 87. Following the incident, "Defendant Telford was cited for being on her cellphone several times during Mr. Collins's medical emergency." Id. ¶ 89. Additionally, "Jimoh was cited for neglect of duty due to failing to take appropriate action and failing to render immediate aid upon discovering Mr. Collins despite being CPR certified." Id. ¶ 90. "Jimoh was also cited for violating Prompt Performance of Duty as failure to perform as directed all lawful duties by required authority." Id. ¶ 91.

**B. Prior Deaths at the Jail**

Defendant Sheriff Melody Maddox ("Maddox") has served as the Sheriff of DeKalb County since December 1, 2019, and was responsible for operating the Jail and supervising its detention officers at the time of Collins's death. Id. ¶¶ 92-93. Since at least 2022, "Maddox has come under fire for the numerous deaths at Dekalb County Jail, where inmates are discovered by detention officers unresponsive." Id. ¶ 94. The Amended Complaint specifically identifies nine deaths that occurred at the Jail in 2022 and four additional deaths in 2023:

> On February 5, 2022, DeKalb County officers performing security checks discovered Jaquay Smith, 21, of Stone Mountain unresponsive

inside a cell. Jaquay Smith's death was a result of a medical deliberate indifference as well as a failure to timely discover his injuries.

On May 16, 2022, DeKalb County officers found Ivory Kelly unresponsive in their jail cell, and they died 12 hours later of a heart attack at Grady Hospital. Ivory Kelly's death was a result of a medical deliberate indifference as well as a failure to timely discover their injuries.

On May 18, 2022, Taneeka Holmes died as a result of cardiovascular disease at DeKalb County Jail.

On July 22, 2022, DeKalb County officers found Stone Mountain resident Vernon Dennis Head, 48, unresponsive in his jail cell. Vernon Dennis Head's death was a result of a medical deliberate indifference as well as a failure to timely discover his injuries.

On July 25, 2022, DeKalb County officers found 55-year-old Decatur resident Nina Maureen Colman dead in the jail infirmary. Nina Coleman's death was a result of a medical deliberate indifference as well as a failure to timely discover her injuries.

On August 14, 2022, DeKalb County officers found Michael Assevero, 65, in his jail cell and unresponsive. Michael Assevero's death was a result of a medical deliberate indifference as well as a failure to timely discover his injuries.

On August 16, 2022, DeKalb County Officers found Viktor Radunchev unresponsive in his cell. Viktor Radunchev's death was a result of a medical deliberate indifference as well as a failure to timely discover his injuries.

On December 26, 2022, DeKalb County officers found Anthony Lamar Walker, 34, unresponsive in his jail cell. Anthony Walker's death was a result of a medical deliberate indifference as well as a failure to timely discover his injuries.

> On Dec. 27, 2022, DeKalb County officers found Clarkston resident Jackson Orukpete, 57, unresponsive in his jail cell. Jackson Orukpete's death was a result of a medical deliberate indifference as well as a failure to timely discover his injuries.
>
> On May 29, 2023, DeKalb County officers found Doraville resident Enil Guillen, 20, hanging in his jail cell and unresponsive. Enil Guillen's death was a result of a medical deliberate indifference as well as a failure to timely discover his injuries.
>
> On June 28, 2023, DeKalb County officers found an inmate in his cell bleeding to death from lacerations. Said inmate's death was a result of a medical deliberate indifference as well as a failure to timely discover his injuries.
>
> On July 19, 2023, DeKalb County officers found Atlanta resident Ricky Lavoghn McCullum, 58, unresponsive in his cell, after having been released from the hospital following a nine-day stay while still in custody. Ricky McCullam became unresponsive while in the jail's intake area before being escorted to a housing unit. Ricky McCullam's death was a result of a medical deliberate indifference as well as a failure to timely discover his injuries.
>
> On November 10, 2023, DeKalb County officers found Michael Breedlove, 33, in his cell but unresponsive after officers were alerted by inmates of the medical emergency. Michael Breeklove's death was a result of a medical deliberate indifference as well as a failure to timely discover his injuries.

Id. ¶¶ 99-107, 109-12. Plaintiff further alleges that four inmates, including Collins, died at the Jail in 2024 and that most of these "involved officers discovering the inmates unresponsive and failing to provide sufficient medical treatment." Id. ¶ 113.

According to Plaintiff, these incidents reflect a broader "course of conduct or custom" at the Jail under which "medical emergencies were often not taken seriously, medical care was delayed, officers did not conduct thorough rounds to discover and report unresponsive inmates, officers failed to have access to proper equipment (radios, AEDs, Narcan, AMBU bags), and emergency interventions were not conducted immediately." Id. ¶ 114. These same deficiencies, Plaintiff alleges, were present during Collin's medical emergency. Id. ¶ 115.

### C. Procedural History

On December 22, 2025, Plaintiff filed an Amended Complaint asserting the following claims: deliberate indifference to serious medical needs in violation of the Fourteenth Amendment against Defendants Stafford, Telford, Jimoh, and Lawrence pursuant to 42 U.S.C. § 1983 (Counts I-IV); state law claims for negligence and gross negligence against Defendants Stafford, Jimoh, Telford, and Lawrence, and for vicarious liability against Defendant Armor Health (Counts V-VI); a § 1983 supervisory claim under the Fourteenth Amendment against Defendant Maddox (Count VII); state law wrongful death and estate claims against all Defendants (Counts VIII-IX); and a claim for punitive damages against all Defendants (Count X). Id. ¶¶ 118-255. Jimoh and Maddox (collectively, "Defendants") move to dismiss the claims against them for failure to state a claim

under Federal Rule of Civil Procedure 12(b)(6). See generally Maddox's Mot.; Jimoh's Mot.

## II. LEGAL STANDARDS

### A. Motion to Dismiss

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Under Federal Rule of Civil Procedure 12(b)(6), a claim will be dismissed for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The Supreme Court has explained this standard as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal citation omitted). Thus, a claim will survive a motion to dismiss only if the factual allegations in the pleading are "enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

At the motion to dismiss stage, the court accepts all well-pleaded facts in the plaintiff's complaint as true, as well as all reasonable inferences drawn from those facts. McGinley v. Houston, 361 F.3d 1328, 1330 (11th Cir. 2004); Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). Not only must the court accept the well-pleaded allegations as true, but these allegations must also be construed in the light most favorable to the pleader. Powell v. Thomas, 643 F.3d 1300, 1302 (11th Cir. 2011). However, the court need not accept legal conclusions, nor must it accept as true legal conclusions couched as factual allegations. Iqbal, 556 U.S. at 678. Thus, evaluation of a motion to dismiss requires the court to assume the veracity of well-pleaded factual allegations and "determine whether they plausibly give rise to an entitlement to relief." Id. at 679.

**B. Qualified Immunity**

Qualified immunity shields government officials from personal liability "for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)); Sherrod v. Johnson, 667 F.3d 1359, 1363 (11th Cir. 2012). The Eleventh Circuit applies a two-part test to determine whether a government official is entitled to qualified immunity. First, "an official must first establish that he was

acting within the scope of his discretionary authority when the allegedly wrongful acts occurred."[5] Oliver v. Fiorino, 586 F.3d 898, 905 (11th Cir. 2009) (quotation and citation omitted). Second, "[o]nce discretionary authority is established, the burden then shifts to the plaintiff to show that qualified immunity should not apply." Edwards v. Shanley, 666 F.3d 1289, 1294 (11th Cir. 2012) (quoting Lewis v. City of W. Palm Beach, 561 F.3d 1288, 1291 (11th Cir. 2009)). A plaintiff demonstrates that qualified immunity does not apply by showing "that the official's conduct violated clearly established law." Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1281 (11th Cir. 1998). In the context of a motion to dismiss on the grounds of qualified immunity, dismissal is required when the "complaint fails to allege the violation of a clearly established constitutional right." Corbitt v. Vickers, 929 F.3d 1304, 1311 (11th Cir. 2019) (citation and quotation omitted).

The second step of the qualified immunity test can be broken down into two sub-steps, requiring the plaintiff to show: "(1) the defendant violated a

---

[5] "The term 'discretionary authority' covers 'all actions of a governmental official that (1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority.'" Hinson v. Bias, 927 F.3d 1103, 1116 (11th Cir. 2019) (quoting Jordan v. Doe, 38 F.3d 1559, 1566 (11th Cir. 1994)). Here, the parties do not dispute that Plaintiff's Section 1983 deliberate indifference claims relate to the actions (or inactions) of Defendants taken (or not taken) while performing their official duties and within the scope of their authority. Thus, the first step of the two-part qualified immunity test is met as to both Defendants.

constitutional right, and (2) this right was clearly established at the time of the alleged violation." Miller v. Palm Beach Cnty. Sheriff's Office, 129 F.4th 1329, 1333 (11th Cir. 2025) (quoting Hollman ex rel. Hollman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004)). A constitutional right is clearly established "only if its contours are 'sufficiently clear that a reasonable official would understand what he is doing violates that right.'" Vaughan v. Cox, 343 F.3d 1323, 1332 (11th Cir. 2003) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). "When we consider whether the law clearly established the relevant conduct as a constitutional violation at the time that [the government official] engaged in the challenged acts, we look for 'fair warning' to officers that the conduct at issue violated a constitutional right." Jones v. Fransen, 857 F.3d 843, 851 (11th Cir. 2017) (citing Coffin v. Brandau, 642 F.3d 999, 1013 (11th Cir. 2011) (en banc)). "The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson, 555 U.S at 236 (2009).

## III. JIMOH'S MOTION TO DISMISS

Jimoh argues that Plaintiff's claims against him (Counts III, V, VIII through X) should be dismissed arguing, inter alia, that (1) he is entitled to qualified

immunity on Plaintiff's Section 1983 deliberate indifference claim (Count III); and (2) he is entitled to official immunity on Plaintiff's state law claims (Counts V and VIII through X). Jimoh's Mot. at 11-18.[6]

### A. Jimoh is Entitled to Qualified Immunity Because His Actions Did Not Violate Clearly Established Law.

Jimoh argues that he is entitled to qualified immunity on Plaintiff's Section 1983 deliberate indifference claim against him because Plaintiff has not sufficiently alleged a violation of a right that was clearly established at the time of the alleged deliberate indifference. Id. at 11-14.

#### 1. Jimoh was acting within the scope of his discretionary authority.

As discussed above, the parties do not dispute that Jimoh was acting within the scope of his discretionary authority if he was "(a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004). The Court finds that Jimoh was acting within his discretionary authority because the challenged conduct occurred within the course

[6] Because the Court finds that Jimoh is entitled to qualified immunity on Plaintiff's Section 1983 deliberate indifference claim, the Court does not address Jimoh's argument that Plaintiff has failed to sufficiently plead a claim for Section 1983 deliberate indifference against him. See id. at 7-11.

and scope of his employment as a detention officer of the DeKalb County Sheriff's Office, responding to a medical emergency. Am. Compl. ¶¶ 16, 159; see also Bryant v. Gwinnett Cnty. Det. Ctr., No. 1:24-CV-0062-MHC, 2024 WL 6981194, at *5 (N.D. Ga. May 21, 2024) ("It is clear that a sheriff performs a discretionary function for purposes of qualified immunity with respect to the provision or withholding of medical care to a jail inmate.") (collecting cases); Brown v. Hannold, No. 06-61313-CIV, 2010 WL 375779, at *2 (S.D. Fla. Jan. 25, 2010) ("Here, Officer Hannold was acting within the scope of his discretionary authority when he responded to a radio alert and administered medical aid to Mr. Brown.").

Accordingly, the Court next considers whether Jimoh's actions violated a constitutional right which was clearly established at the time of the alleged violation with regard to Plaintiff's Section 1983 deliberate indifference claim against him. See Whittier, 581 F.3d at 1308.

### 2. The allegations against Jimoh, if true, would not allege the violation of a clearly established constitutional right.

The Eighth Amendment forbids the "inflict[ion]" of "cruel and unusual punishments." U.S. CONST. amend. VIII.[7] Because the amendment prohibits "the

[7] "Technically, the Fourteenth Amendment Due Process Clause, not the Eighth Amendment prohibition on cruel and unusual punishment, governs pretrial

unnecessary and wanton infliction of pain," it also bars "deliberate indifference to [the] serious medical needs of prisoners." Estelle v. Gamble, 429 U.S. 97, 103-04 (1976); Hoffer v. Sec'y, Fla. Dep't of Corr., 973 F.3d 1263, 1270 (11th Cir. 2020). "An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." Estelle, 429 U.S. at 103. "Federal and state governments therefore have a constitutional obligation to provide minimally adequate medical care to those whom they are punishing by incarceration." Hoffer, 973 F.3d at 1270; see also Harris v. Thigpen, 941 F.2d 1495, 1504 (11th Cir. 1991) (holding that the state has "a constitutional obligation to provide minimally adequate medical care" to those it has incarcerated). "[D]elay in access to medical care that is 'tantamount to unnecessary and wanton infliction of pain,' may constitute deliberate indifference to a prisoner's serious medical needs." Adams v. Poag, 61 F.3d 1537, 1544 (11th Cir. 1995) (quoting

---

detainees like [Plaintiff]." Goebert v. Lee Cnty., 510 F.3d 1312, 1326 (11th Cir. 2007) (citing Snow ex rel. Snow v. City of Citronelle, 420 F.3d 1262, 1268 (11th Cir. 2005)). However, because "the standards under the Fourteenth Amendment are identical to those under the Eighth," id. (citing Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., 402 F.3d 1092, 1115 (11th Cir. 2005)), the Eleventh Circuit has held that, "in regard to providing pretrial detainees with such basic necessities as food, living space, and medical care the minimum standard allowed by the due process clause is the same as that allowed by the eighth amendment for convicted persons." Hamm v. DeKalb Cnty., 774 F.2d 1567, 1574 (11th Cir. 1985).

Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990) (per curiam), cert. denied, 496 U.S. 928 (1990)). But not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Estelle, 429 U.S. at 105.

To state a claim for deliberate indifference to his serious medical needs, a pretrial detainee must allege facts demonstrating objective and subjective components:

> First, of course, the plaintiff must demonstrate, as a threshold matter, that he suffered a deprivation that was, "objectively, 'sufficiently serious.'" Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citation omitted).
>
> Second, the plaintiff must demonstrate that the defendant acted with "subjective recklessness as used in the criminal law," id. at 839, and to do so he must show that the defendant was actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff—with the caveat, again, that even if the defendant "actually knew of a substantial risk to inmate health or safety," he "cannot be found liable under the Cruel and Unusual Punishments Clause" if he "responded reasonably to the risk." Id. at 844–45.

Wade v. McDade, 106 F.4th 1251, 1262 (11th Cir. 2024); see also Farmer, 511 U.S. at 844 ("[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.").

Plaintiff alleges that Jimoh violated Collins's Fourteenth Amendment rights by being deliberately indifferent to Collins's serious medical needs. Am. Compl. ¶¶ 158-78. Specifically, Plaintiff claims that

> Defendant Jimoh's response—ignoring obvious unresponsiveness of Mr. Collins; failing to check Mr. Collins for a pulse or breathing; leaving the scene to slowly walk for help; and without using any available basic lifesaving measures— displayed subjective recklessness and reflects a deliberate disregard of a known, substantial risk of serious harm.

Id. ¶ 168. Plaintiff also alleges that Jimoh's "failure to act promptly—including the failure to (a) immediately call a medical emergency or 'Signal 2' (inmate down), (b) ensure CPR was initiated, (c) retrieve or ensure retrieval of an AED, Narcan, or AMBU bag, and (d) secure rapid entry for medical personnel" also constituted deliberate indifference to a serious medical need. Id. ¶ 169. Plaintiff further alleges that Jimoh is not entitled to qualified immunity "because he had more than fair warning that his conduct was unconstitutional in not providing/delaying medical care to Mr. Collins while unconscious and unresponsive[.]" Id. ¶ 174 (citing Aldridge v. Montgomery, 753 F.2d 970 (11th Cir. 1985), Patel v. Lanier Cnty., 969 F.3d 1173 (11th Cir. 2020), and Bozeman v. Orum, 422 F.3d 1265 (11th Cir. 2005)).[8]

---

[8] The cases cited in Plaintiff's Amended Complaint are distinguishable. While Aldridge does relate to the provision of medical care in jail, that case involved a

The Court does not reach the issue of whether Jimoh's alleged acts and omissions violate the Fourteenth Amendment because, even if they did, such a violation was not clearly established at the time of the alleged deliberate indifference. See Piazza v. Jefferson Cnty., 923 F.3d 947, 951 (11th Cir. 2019) (holding that a court may consider the two qualified immunity prongs in either order and that "an official is entitled to qualified immunity if the plaintiff fails to establish either"). As an initial matter, the case law is clear that Jimoh had no duty

plaintiff who was injured in a scuffle during his arrest in which the defendant officers caused the serious medical condition (a one and a half inch cut over the plaintiff's eye) and then ignored the plaintiff's serious medical condition for two and a half hours. See Aldridge, 753 F.2d at 972. The defendant officers also intentionally interfered with the prescribed treatment for the plaintiff when they refused to give the plaintiff prescribed ice and pain medication. Id. at 973. Patel is likewise distinguishable because the defendant officer, a trained medical first-responder, was singularly responsible for creating the plaintiff's serious medical condition by locking the plaintiff in the back of a van without air conditioning in the heat of the day, was aware of the serious medical condition for over two hours (because he twice found him unconscious), roused him, and witnessed other symptoms (sweating, hyperventilating, shaking profuse drooling). Despite being aware of the serious medical condition for over two hours, he "flatly ignored" the plaintiff, and "did nothing" to help him. See Patel, 969 F.3d at 1178-79, 1190-92. Similarly, Bozeman is distinguishable because the officer defendants who caused the serious medical condition by suffocating the detainee while trying to subdue him knew for fourteen minutes that he was unconscious or not breathing and they "failed to call for medical help, administer CPR, or to otherwise help" him. Bozeman, 422 F.3d at 1272. In contrast, Jimoh did not cause Collins's medical condition and, upon learning of Collins's condition, Jimoh examined him and called for medical help within two minutes.

pursuant to the Fourteenth Amendment to administer medical aid himself and, therefore, his failure to do so after calling for medical assistance is not deliberate indifference. "Given that all relevant and binding case law holds there is no obligation for a police officer to personally provide medical care, it cannot be said that the constitutional right in question was clearly established." Aaron as next friends of Aaron v. Hudson, No. 6:21-CV-01058-LSC, 2022 WL 1085608, at *3 (N.D. Ala. Apr. 11, 2022) ("[W]hen an officer injures a suspect during an arrest, the suspect's Fourteenth Amendment rights require only that the responsible officer call for medical assistance."); see also Blidge v. Ferguson, No. 4:24-CV-00131, 2026 WL 852132, at *14 (S.D. Ga. Mar. 27, 2026) ("Courts in this circuit have repeatedly held that officers satisfy their constitutional obligation to provide medical care so long as they summon EMS within a reasonable time after a shooting."); McKee v. Montiel, No. 6:21-CV-1085-CEM-EJK, 2024 WL 2879114, at *8 (M.D. Fla. May 3, 2024) (holding that there was no deliberate indifference to medical needs claim when officers requested EMS one minute and thirty-two seconds after shooting: "In the Eleventh Circuit, several district courts have held that an officer is not required to personally provide medical care."); Pettaway v. Barber, No. 2:19-CV-008-ECM, 2023 WL 1422457, at *12 (M.D. Ala. Jan. 31, 2023) ("When an officer promptly calls for medical assistance, courts have not

required officers to personally provide first aid to individuals injured in the course of an arrest."); Peacock v. Smith, 2018 WL 5649899, at *7 (M.D. Ga. Oct. 31, 2018) (finding that there was no deliberate indifference to medical needs claim when officers requested EMS eight seconds after shooting suspect: "[N]either the Supreme Court [nor the] Eleventh Circuit . . . have ever distinctively held that an officer must personally render aid to an injured individual.").

Accordingly, the question in this case is whether the time it took for Jimoh to self-assess Collins' condition and then walk "without any speed" to call for help, taking up a total of two minutes, constitutes deliberate indifference.

> A delay in medical treatment for serious or painful injuries may amount to deliberate indifference. Harris v. Coweta Cnty., 21 F.3d 388, 393 (11th Cir. 1994). Whether a delay constitutes deliberate indifference depends on the reason for the delay, the length of the delay, and the nature of the medical need. Id. at 393-94. The Eleventh Circuit has concluded that "an unexplained delay of hours in treating a serious injury states a prima facie case of deliberate indifference." Brown, 894 F.2d at 1538 ("When prison guards ignore without explanation a prisoner's serious medical condition that is known or obvious to them, the trier of fact may infer deliberate indifference."). See also Estelle, 429 U.S. at 104, n. 11 (citing Hughes v. Noble, 295 F.2d 495, 495 (5th Cir. 1961)) (thirteen hours); and Fitzke v. Shappell, 468 F.2d 1072 (6th Cir. 1972) (twelve hours). Similarly, "[a] delay in care for unconsciousness . . . is especially time-sensitive and must ordinarily be measured not in hours, but in a few minutes." Bozeman, 422 F.3d at 1273. "Where the prisoner has suffered increased physical injury due to the delay, we have consistently considered: (1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay." Colorado-Keen v. Rockdale Cnty.,

> 775 F. App'x 555, 569 (11th Cir. 2019) (citing Goebert, 510 F.3d at 1327).

Murey v. City of Chickasaw, No. 1:18-00275-KD-N, 2019 WL 6270236, at *12 (S.D. Ala. Nov. 22, 2019). The Eleventh Circuit has held that "the right reason for the delay can make a delay of any duration tolerable." Bozeman, 422 F.3d at 1273.

A review of case law in this Circuit reveals that this issue is nuanced. On one end of the spectrum, facts that demonstrate an immediate call for help do not substantiate a claim for deliberate indifference. See Adams v. Custer, No. 14-CV-80403-CIV, 2016 WL 155081, at *3, 17 (S.D. Fla. Jan. 12, 2016), aff'd sub nom. Adams v. Sheriff of Palm Beach Cnty., 658 F. App'x 557 (11th Cir. 2016) (granting summary judgment to the officer on the deliberate indifference to serious medical needs claim where the officer "promptly called for EMS back-up" at least two minutes after he shot the plaintiff but did not personally provide any medical aid). On the other end of the spectrum, facts that demonstrate a delay of fourteen minutes or longer without explanation can support a claim for deliberate indifference. See Bozeman, 422 F.3d at 1273 (denying motion for summary judgment, finding that there was an actionable claim for deliberate indifference where "the Officers, who knew Haggard was unconscious and not breathing and who then failed for fourteen minutes to check Haggard's condition, call for medical assistance, administer CPR or do anything else to help.").

In the middle of that spectrum exists a grey area in which a delay may or may not constitute deliberate indifference, depending on the explanation for the delay and any extenuating factors. See Valderrama v. Rousseau, 780 F.3d 1108, 1120, 1122-23 (11th Cir. 2015) (finding that it is clearly established law that the officer's conduct constituted deliberate indifference where two officers waited three and a half minutes to call for medical assistance in response to a gunshot wound that they had inflicted because they were discussing the wound and where one of the officers misrepresented the nature of the wound to EMS, causing them to take longer to arrive); Murey, 2019 WL 6270236, at *12-13 (finding that the plaintiff failed to show that the law was clearly established that the officer was deliberately indifferent where he waited six minutes between discovering an unresponsive inmate and calling EMS because she checked on the inmate and then "rushed back to her office" to call for help).

Plaintiff alleges that Jimoh first became aware that Collins was unresponsive and learned that he had been non-responsive "for hours and needed serious medical attention" at 7:37 p.m. on March 13, 2024. Am. Compl. ¶¶ 53-55. Jimoh immediately "yanked" Collins's arm "for about ten seconds" to see if Collins was responsive and then "lifted his shirt and witnessed no movement of his chest, and touched his cooling body." Id. ¶¶ 56-57. At 7:38 p.m., one minute after first

seeing Collins, Jimoh "ordered inmates to line up on the wall," and then "banged his baton on the floor in front of Mr. Collins and Mr. Collins did not respond." Id. ¶¶ 58-59. One minute later, "[a]t around 19:39, Defendant Jimoh left the dayroom and walked, without any speed, to the guard tower (twenty feet away) to ask Defendant Stafford to conduct a 'signal 2' (man down) for him." Id. ¶ 60. Accepting Plaintiff's allegations as true, two minutes passed between the time Jimoh learned of Collins's serious medical condition and calling for medical assistance.[9]

> Even if a constitutional violation based on deliberate indifference was shown, Defendant is entitled to qualified immunity. Questions of deliberate indifference to medical needs based on claims of delay are complicated questions because the answer is tied to the combination of many facts; a change in even one fact from a precedent may be significant enough to make it debatable among objectively reasonable officers whether the precedent might not control in the circumstances later facing an officer. No preexisting law clearly established that an approximately two-to-five-minute delay of medical care—either while Plaintiff moved from the waiting room to her cell or then while the cellmate waited for a guard to respond to her signaling—is a constitutional violation, especially with facts like this case.

[9] The Court further notes that at least a portion of this two-minute period was caused by Jimoh checking on Collins's condition for himself. While the Court cannot say this was the best course of action, "[t]he best response to a serious medical need is not required by federal law in these cases." Davis v. City of Leesburg, No. 5:12-CV-609-OC-10PRL, 2014 WL 4926143, at *22 (M.D. Fla. Sept. 30, 2014).

Pourmoghani-Esfahani v. Gee, 625 F.3d 1313, 1318-19 (11th Cir. 2010).

Plaintiff has failed to cite any law that the two-minute delay in this case was a violation of clearly established law.[10] See Arenas v. Ga. Dep't of Corr., No. CV416-320, 2020 WL 1849362, at *10 (S.D. Ga. Apr. 13, 2020) (finding defendant officers were entitled to qualified immunity where the "Plaintiff does not cite a case which clearly establishes that a two-to-three-minute delay in providing medical care is unreasonable, deliberately indifferent, or more than mere negligence."). Because Plaintiff has failed to cite a case which clearly establishes

[10] As noted above, the three cases cited by Plaintiff in the Amended Complaint are distinguishable from this case because they all involved serious medical conditions that were caused by the defendants themselves, included complete inaction or affirmative interference with medical assistance on the part of the defendants, and involved significantly longer periods of delayed medical care. Aldridge, 753 F.2d at 972 (reversing the directed verdict for defendant officers who failed and "intentionally interfered" with the provision of medical care to the plaintiff for two and a half hours); Patel, 969 F.3d at 1191 (reversing the grant of summary judgment to the officer defendant, a trained medical first-responder who was aware of the serious medical condition for over two hours, but "flatly ignored" the plaintiff, and "did nothing" to help him); Bozeman, 422 F.3d 1272 (affirming denial of summary judgment on qualified immunity grounds where officers "failed to call for medical help, to administer CPR, or otherwise to help" detainee for fourteen minutes who they knew was unconscious or not breathing because they had suffocated him while attempting to detain him). Similarly, the case cited by Plaintiff in response to Jimoh's Motion to Dismiss, Lancaster v. Monroe Cnty., 116 F.3d 1419 (11th Cir. 1997), involved the defendants' alleged complete failure to act, some for over twelve hours, despite being aware of the detainee's serious medical condition.

that the passage of two minutes between the time Jimoh learned of Collins's condition and when he called for medical care is unreasonable, deliberately indifferent, or criminally reckless, Jimoh is entitled to qualified immunity. Pourmoghani-Esfahani, 625 F.3d at 1318; see also Murey, 2019 WL 6270236, at *13-14 (S.D. Ala. Nov. 22, 2019) (finding the plaintiff failed to show that the law was clearly established that delay in calling medical personnel for six minutes and "failure to administer CPR [for twelve minutes] while waiting on medical personnel to arrive is unconstitutional").

Accordingly, Jimoh's Motion to Dismiss is **GRANTED** as to Count III.

### B. Jimoh is Entitled to Official Immunity on Plaintiff's State Law Claims.

Plaintiff asserts state law claims for negligence and gross negligence (Count V), wrongful death (Count VIII), and estate claims (Count IX) based on Jimoh's alleged acts and omissions.[11] Am. Compl. ¶¶ 197-205, 237-245. Jimoh argues that these state law claims are barred by official immunity because they concern discretionary law enforcement functions and the Amended Complaint does not

[11] Plaintiff also asserts a claim for punitive damages (Count X) against Jimoh. However, a claim for punitive damages is not an independent cause of action but dependent on the underlying substantive claims. Norris v. Atlanta Braves, Inc., 376 Ga. App. 663, 671 (2025).

include a non-conclusory allegation that the challenged conduct was done with actual malice. Jimoh's Mot. at 15-17. In response, Plaintiff argues that Jimoh's actions in responding to Collins's emergency were ministerial, and that even if they weren't, he performed them with actual malice. Pl.'s Resp. in Opp'n to Jimoh's Mot. ("Pl.'s Opp'n to Jimoh's Mot.") [Doc. 37] at 17.

The Georgia Constitution provides, in pertinent part:

> [A]ll officers and employees of the state or its departments and agencies may be subject to suit and may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform, their ministerial functions and may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions. Except as provided in this subparagraph, officers . . . shall not be subject to suit or liability, and no judgment shall be entered against them, for the performance or non performance of their official functions.

GA. CONST. art. I, § 2, ¶ IX(d). "Stated succinctly, a public officer or employee may be personally liable only for ministerial acts negligently performed or acts performed with malice or an intent to injure." Graham v. Cobb Cnty., 316 Ga. App. 738, 742 (2012).

**1. Plaintiff has not sufficiently alleged that Jimoh was performing a ministerial function.**

Jimoh argues that "[a]n officer's response to an unfolding medical emergency in a jail setting is a quintessential discretionary act, requiring personal deliberation and judgment." Jimoh's Mot. at 15 (citing Selvy v. Morrison, 292 Ga.

App. 702, 704 (2008)).[12] In response, Plaintiff argues that Jimoh's failure to immediately escalate the situation, to immediately assess Collins's condition, and to render medical aid including CPR and Narcan, are all ministerial because they violate policies which were "imposed on jail officials to remove discretion thereby creating ministerial duties." Pl.'s Opp'n to Jimoh's Mot. at 16 (citing Garren v. Bryant, 377 Ga. App. 699, 708 (2025)).

"Under Georgia law, a 'ministerial act' is 'commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty.'" Davis v. Brown, No. 1:16-CV-00735, 2019 WL 1206431, at *10 (N.D. Ga. Mar. 14, 2019) (quoting Grammens v. Dollar, 697 S.E.2d 775, 777 (Ga. 2010)). "A discretionary act, however, calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed." McDowell v. Smith, 285 Ga. 592, 593 (2009) (quoting Murphy v. Bajjani, 282 Ga. 197, 199 (2007)).

> Where there is an established policy requiring an official to take specified action in a specified situation, the policy creates a ministerial duty on the part of the official to perform the specified task. Happoldt

[12] Selvy is inapposite because it does not involve and emergency medical situation in a jail; instead, it involves claims of assault, battery, false arrest, and false imprisonment. See generally id.

> v. Kutscher, 256 Ga. App. 96(1) (2002). See also Standard v. Hobbs, 263 Ga. App. 873(1) (2003) ("when 'a governmental department creates its own policy requiring certain actions under certain situations, then the actors for that department have a ministerial duty to follow the policy.'"). In order for the written policy to impose a ministerial duty, the policy must mandate simple, absolute, and definite action and require the execution of a specific task without any exercise of discretion. McDowell, [285 Ga. at 593-94].

Grammens, 287 Ga. at 620 (2010).

Here, Plaintiff points to the following allegations as establishing that Jimoh's actions were mandated by policy and were therefore ministerial:

> Defendant Jimoh, Defendant Telford, and Defendant Stafford, breached their duties to Mr. Collins when they exposed him to unreasonable risks of harm and violated the written policies of the DeKalb County jail with reckless disregard and were negligent in the performance of their ministerial duties. Such negligence includes but is not limited to:
>
> a. Defendant Jimoh's, Defendant Telford's, and Defendant Stafford's failure to timely conduct CPR;
>
> b. Defendant Jimoh's, Defendant Telford's, and Defendant Stafford's failure to administer an AED, Ambu Bag, and Narcan;
>
> c. Defendant Jimoh's, Defendant Telford's, and Defendant Stafford's failure to timely request medical help and call 911;
> ***
> e. Defendant Jimoh's neglect of duty and failure to promptly perform his duties per Dekalb County citation;
>
> f. Defendant Jimoh's failure to check for Mr. Collins's breathing and pulse;

> g. Defendant Jimoh's, Defendant Telford's, Defendant Stafford's, and Defendant Lawrence's failure to follow policies on emergency protocol as well as provision of medical care in emergency situations; and
>
> h. All other negligence described herein.

Am. Compl. ¶ 200. Although these allegations clearly assert that Jimoh's actions violated some of the Jail's policies, they do not provide any detail about what specific actions those polices require such that they created a ministerial duty. See Roper v. Greenway, 294 Ga. 112, 115, 751 S.E.2d 351, 353 (2013) ("Procedures or instructions adequate to cause an act to become merely ministerial must be so clear, definite and certain as merely to require the execution of a relatively simple, specific duty."); see also Bailey v. Henry Cnty., No. 1:19-CV-03504-LMM-RDC, 2021 WL 6113626, at *21 (N.D. Ga. May 10, 2021), R&R adopted in part, rejected in part, No. 1:19-CV-3504-LMM-RDC, 2021 WL 9526873 (N.D. Ga. June 30, 2021) ("[T]he mere allegation that Hobson-Matthews's actions were performed contrary to policy or procedure is not enough to render her acts ministerial.").

> [I]n their broad argument that Sheriff Defendants' actions are ministerial, Plaintiffs do not identify the policy that set out the specific acts that they contend Sheriff Defendants performed negligently . . . . In absence of evidence showing this Court what specific policy required the actions that were not taken in this case, the Court finds that the complained of actions, including the failure to act, are discretionary acts.

Jenkins v. Corizon Health Inc., No. CV418-099, 2020 WL 5492543, at *8 (S.D. Ga. Sept. 10, 2020). Because Jimoh's alleged action or inaction in this case was not ministerial, Jimoh is entitled to official immunity unless Plaintiff demonstrates that Jimoh acted with actual malice or intent to cause injury.

**2. Plaintiff has not sufficiently alleged that Jimoh acted with actual malice.**

Jimoh argues that as alleged, his action (or inaction) "at most describe a potential error in judgment or a failure to follow a preferred protocol," which is mere negligence, and that the Amended Complaint is devoid of any non-conclusory allegations that he acted with actual malice. Jimoh's Mot. at 16-17. In response, Plaintiff argues that Jimoh's actual malice is inferred because "he deliberately refused to act on rendering aid or help render aid as Mr. Collins lay dying." Pl.'s Opp'n to Jimoh's Mot. at 17-18 (citing Bateast v. Dekalb Cnty., 258 Ga. App. 131, 132 (2002); Williams v. Cobb Cnty. Sheriff's Off., No. 1:13-CV-3567-TWT, 2014 WL 2922360, at *4 (N.D. Ga. June 26, 2014)).[13]

In Georgia,

---

[13] Plaintiff's cited cases are inapposite to Plaintiff's argument that actual malice can be inferred from Jimoh's actions because both cases involve plaintiffs who were arrested or prosecuted despite the officer's knowledge that they did not commit the crimes for which they were arrested or prosecuted. See Bateast, 258 Ga. App. at 132 (2002) (holding that a jury could find officers acted with actual malice where they "proceeded in their arrest of [the plaintiff] despite their

> [a]ctual malice requires a deliberate intention to do wrong and express malice or malice in fact. Actual malice does not include implied malice or the reckless disregard for the rights and safety of others. A deliberate intention to do wrong such as to constitute the actual malice necessary to overcome official immunity must be the intent to cause the harm suffered by the plaintiffs. Likewise, "[t]he phrase 'actual intent to cause injury' has been defined in a tort context to mean an actual intent to cause harm to the plaintiff, not merely an intent to do the act purportedly resulting in the claimed injury. This definition of intent contains aspects of malice, perhaps a wicked or evil motive."

Selvy, 292 Ga. App. at 704-05 (quoting Kidd v. Coates, 271 Ga. 33, 33-34 (1999)); see also Adams v. Hazelwood, 271 Ga. 414, 415 (1999) ("Actual malice requires more than harboring bad feelings about another. While ill will may be an element of actual malice in many factual situations, its presence alone cannot pierce official immunity; rather, ill will must also be combined with the intent to do something wrongful or illegal."). "Unlike qualified immunity under federal law, we must inquire into [the public agent's] subjective intent to determine whether he has official immunity under Georgia law." Jordan v. Mosley, 487 F.3d 1350, 1357 (11th Cir. 2007). As explained by the Eleventh Circuit, "malice in this context

---

knowledge that she had not committed the crimes for which they accused her[.]"); Williams, 2014 WL 2922360, at *4 (finding that the plaintiff had sufficiently alleged actual malice where he alleged that he was prosecuted "with no factual basis to support any of the charges."). These cases are not factually analogous to the current matter and involve specific allegations or evidence which supported an inference of subjective intent.

means badness, a true desire to do something wrong." Peterson v. Baker, 504 F.3d 1331, 1339 (11th Cir. 2007). In addition, "actual intent to cause injury" means "an actual intent to cause harm to the plaintiff, not merely an intent to do the act purportedly resulting in the claimed injury." Id.; see also Murphy, 282 Ga. at 203 (quoting Merrow v. Hawkins, 266 Ga. 390, 391-92 (1996)) ("Actual malice" refers to "a deliberate intention to do wrong," which is more than simply "reckless disregard for the rights or safety of others.").

Here, the only allegations in the Amended Complaint as to Jimoh's subjective intent are entirely conclusory and are therefore insufficient to establish actual malice. Am. Compl. ¶¶ 204, ("Defendant Jimoh, Defendant Telford, and Defendant Stafford are not entitled to official immunity as public officers or employees with respect to the negligence and gross negligence described herein because their tortious acts were ministerial in nature, and Defendant Jimoh, Defendant Telford, and Defendant Stafford performed them negligently."); 254 ("Defendant Jimoh, Defendant Telford, Defendant Stafford, and Defendant Lawrence acted with the specific intent to cause harm in that said Defendants desired to cause the consequences of their actions and/or knew that the consequences of their actions were substantially certain to result."); see Puckett v. Ward, No. 2:24-CV-3-RWS, 2024 WL 6980526, at *13 (N.D. Ga. Apr. 3, 2024)

("[C]onclusory allegations, without more, fail to give rise to any inference that Defendant acted with actual malice.") (citing Neal v. DeKalb Cnty., Ga., 2016 WL 3476873, at *7 (N.D. Ga. June 27, 2016)). Because the Amended Complaint does not contain any non-conclusory, specific allegations as to Jimoh's intent, actual malice cannot be inferred from Jimoh's actions. See Pearson v. Fulton Cnty., Georgia, No. 1:08-CV-3758-WCO-CCH, 2010 WL 11509072, at *3 (N.D. Ga. Sept. 2, 2010) ("Actual malice in the context of official immunity [in Georgia] is malice in fact, and it does not encompass the legal principle of implied malice. Thus, actual malice does not include conduct exhibiting a reckless disregard for human life, or acts involving reckless disregard for the safety of others. Defendants' alleged actions, at most, might give rise to a genuine issue of material fact as to whether they exhibited a reckless disregard for the safety of plaintiff. The court finds no evidence in the record that gives rise to a genuine issue of material fact as to whether defendants acted with actual malice.") (citation and quotation omitted); Bagwell v. Hall Cnty., No. 2:14-CV-00195-RWS, 2015 WL 1919956, at *6 (N.D. Ga. Apr. 28, 2015) (finding that the plaintiff did not allege actual malice where he "failed to include any specific facts in its allegations to show the Defendant acted with an intent to injure or with actual malice" in failing to provide medical treatment).

Because Plaintiff does not sufficiently allege that Jimoh acted with actual malice, he is entitled to official immunity as to Plaintiff's state law claims against him. Accordingly, Jimoh's Motion to Dismiss is **GRANTED** as to Counts V and VIII through X.

## IV. MADDOX'S MOTION TO DISMISS

Maddox argues that Plaintiff's claims against her should be dismissed because (1) she is entitled to qualified immunity on Plaintiff's Section 1983 supervisory liability claim (Count VII); and (2) to the extent the state law claims are not derivative of the federal claims, she is entitled to official immunity on Plaintiff's state law claims (Counts VIII through X). Maddox's Mot. at 7-19.

### A. Maddox is Not Entitled to Qualified Immunity on Plaintiff's Supervisory Deliberate Indifference Claim.

As explained above, as a detainee at the DeKalb County Jail, Collins had constitutional right to "minimally adequate medical care." Hoffer, 973 F.3d at 1270.

> Our cases have consistently held that knowledge of the need for medical care and an intentional refusal to provide that care constitutes deliberate indifference. Medical treatment that is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness constitutes deliberate indifference. . . . Additionally, when the need for medical treatment is obvious, medical care that is so cursory as to amount to no treatment at all may constitute deliberate indifference. Also, delay in access to medical care that is

> tantamount to unnecessary and wanton infliction of pain, may constitute deliberate indifference to a prisoner's serious medical needs.

Adams, 61 F.3d at 1543-44 (citation and quotation omitted).

Plaintiff does not allege that Maddox personally participated in any action (or inaction) that led to the death of Collins. Instead, Plaintiff asserts a deliberate indifference to serious medical needs against Maddox as a supervisor of the individuals who personally participated in the violation of Collins's constitutional rights. Am. Compl. ¶¶ 217-36. Because Maddox has asserted the qualified immunity defense and no party disputes that she was as acting within her discretionary authority as the individuals who were responsible for the medical care of Collins, the burden shifts to the Plaintiff to show that the application of the qualified immunity defense is inappropriate in this case by demonstrating that Maddox violated Collins's constitutional rights and that the rights were clearly established. Saucier v. Katz, 533 U.S. 194, 201 (2001).

### 1. Plaintiff has sufficiently alleged a constitutional violation.

"It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of

respondeat superior or vicarious liability." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).

> Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation. The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences.

Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990) (citations omitted). A plaintiff can also establish a causal connection "when the supervisor's improper custom or policy resulted in deliberate indifference to constitutional rights." Dalrymple v. Reno, 334 F.3d 991, 995 (11th Cir. 2003) (internal punctuation and citation omitted).

Plaintiff alleges that Collins's constitutional rights were violated by deliberate indifference to his serious medical needs by Defendant Maddox's subordinates. Am. Compl. ¶ 220. Specifically, Plaintiff alleges that

> [t]here was a history of widespread abuse [at the DeKalb County Jail] that was obvious, flagrant, rampant, and of continued duration with regards to insufficient medical care, as indicated by the numerous prior inmate deaths related to insufficient medical care and a failure to discover medically distressed inmates that put Defendant Maddox on notice of the need to take action and she failed to do so.

> Defendant Maddox had authority and responsibility over the governing of the Dekalb County Jail and its operations and had the authority and responsibility of implementing policies and procedures for the Jail.
>
> Defendant Maddox disregarded the known or obvious consequences of her actions as she failed to take action and correct the customs and practices that led to the numerous medically-related inmate deaths at Dekalb County Jail.

Id. ¶¶ 221-23. Further, Plaintiff alleges that, since 2022, at least seventeen individuals have died at the Jail, "most of which occurred where officers discovered the inmates unresponsive and failed to provide sufficient medical treatment." Id. ¶¶ 98-113. Plaintiff identifies most of the individuals and some of the circumstances of their deaths, all of which are alleged to have occurred as a "result of medical deliberate indifference as well as a failure to timely discover [their] injuries." Id. ¶¶ 99-100, 102-07, 109-12. Plaintiff's Amended Complaint also contains specific allegations detailing sixteen deaths at the Jail in the two years preceding the death of Collins, at least twelve of which of which are alleged to be the result of deliberate indifference to detainees' medical needs and a failure to discover the inmates' injuries after they are discovered unresponsive. Id. ¶¶ 98-113. The allegations of the individual deaths include factual allegations including the individuals' names, date of death, and/or cause of death. Id. Plaintiff also alleges that the

> [u]nconstitutional customs, supervision, practices and courses of conduct that are so widespread that they have acquired the force of law, through repeated acts of Defendant Maddox whereby medical emergencies were often not taken seriously, medical care was delayed, officers did not conduct thorough rounds to discover and report unresponsive inmates, officers failed to have access to proper equipment (radios, AEDs, Narcan, AMBU bags), and emergency interventions were not conducted immediately remained under Defendant Maddox's reign for years uncorrected.
>
> Such customs, practices, and supervision created and carried out by Defendant Maddox constituted a persistent and wide-spread practice.
> ***
> Defendant Maddox had actual and constructive knowledge of a widespread, persistent pattern of death caused by a failure to discover injuries as well as medical deliberate indifference because she read and reviewed the incident reports, issued public statements regarding the deaths, was criticized by news agencies regarding the deaths, and oversaw the jail where the deaths occurred.

Id. ¶¶ 224-25, 230.

Maddox contends that only one of the deaths identified in the Amended Complaint involves the death of a detainee whose death was "similar in the fact that detention officers plausibly knew, for a period of time before medical assistance was administered, that the inmate was suffering a serious medical emergency." Maddox's Mot. at 7.[14] Maddox argues that one previous similar

[14] Maddox acknowledges that Plaintiff's allegations regarding Ricky Lavoghn McCullum's death on July 19, 2023, see Am. Compl. ¶ 111, is similar to the facts of the present case, "jail staff could have subjectively known [McCullum] had a

incident of alleged unconstitutional medical care is insufficient to plausibly allege widespread abuse or a custom that could amount to deliberate indifference. Id. at 12 (citing Myrick v. Fulton Cnty., 69 F.4th 1277, 1298 (11th Cir. 2023)). Maddox quotes Myrick for the proposition "that a plaintiff had failed to show widespread abuse because there was no indication that the three prior incidents were 'for the same types of allegedly unconstitutional actions.'" Id. However, Myrick is inapposite, Maddox's quotation is taken out of context, and her reference to this case is misleading.

In Myrick, the Eleventh Circuit affirmed the district court's dismissal of the supervisory claims against the sheriff based on an application of qualified immunity because "[t]here is simply nothing alleged in the complaint demonstrating that Sheriff Jackson would have had notice of the alleged widespread abuse." Myrick, 69 F.4th at 1298. Far from alleging three dissimilar incidents as Maddox would have this Court believe, the plaintiff in Myrick did not allege even one prior incident. Id. ("There is no indication in the complaint of even a single other allegedly unwarranted tasing."). Instead, the plaintiff in that case relied on "[t]hree [types of] allegations in the complaint [that] address alleged

---

serious medical need before finding the inmate unresponsive." Maddox's Mot. at 11.

obvious, flagrant, rampant, and continued abuse": (1) allegations of settlements based on the sheriff's unconstitutional actions; (2) allegations that the sheriff permitted a custom of excessive force by permitting unwarranted tasing of inmates as evidenced by the allegation that deputies used the term "Taser Tuesday"; and (3) the sheriff's failures to train. Id. Additionally, the language quoted by Maddox refers to the allegations of settlements, not prior similar incidents. Id. ("There is no indication that the judgments and settlements were for the same types of allegedly unconstitutional actions.").

Unlike in Myrick where the plaintiff did not allege any prior incidents that would put the supervisory defendant on notice of the need to correct the alleged deprivation, Plaintiff in this case alleges that there were sixteen deaths at the Jail in the two years preceding the death of Collins, at least twelve of which are alleged to be the result of deliberate indifference to detainees' medical needs and a failure to discover the inmates' injuries after they were discovered unresponsive. Maddox admits at least one of the allegations is "relevant" and "similar." Maddox's Mot. at 11.

The Court finds persuasive the Eleventh Circuit's opinion in Harper v. Lawrence Cnty., where the plaintiff relied on allegations including only one prior incident to demonstrate the causal connection between the defendants' action (or

inaction) and the alleged constitutional deprivation.[15] Harper v. Lawrence Cnty., 592 F.3d 1227, 1236 (11th Cir. 2010). "Although Plaintiff does mention 'widespread' constitutional rights deprivations," the allegations supporting a causal connection were based on the defendants' customs or policies that resulted in constitutional harm to the plaintiff. Id.

> Specifically, Plaintiff alleges that those Defendants, who were responsible for the management and administration or oversight of the jail, had customs or policies of improperly screening inmates for alcohol withdrawal, improperly handling inmates addicted to alcohol or drugs, delaying medical treatment and restricting access to outside medical providers in order to save money, primarily using emergency medical treatment for physical injuries only, and also failing to train jailers in identifying inmates with alcohol dependency.

Id. The complaint referenced one "strikingly similar" prior incident that occurred one month prior to the incident forming the basis of the lawsuit wherein an alcoholic individual was taken into custody and was not properly screened for the potential for suffering from withdrawal and then was not treated for alcohol withdrawal. Id. at 1236-37. The Eleventh Circuit held that the Plaintiff met the Rule 8 pleading standards based upon the complaint's factual detail about the incident forming the basis of the case and the similar incident just one month

---

[15] Plaintiff cited Harper in opposition to Maddox's Motion to Dismiss. Maddox does not address Harper her reply brief. See Reply in Supp. of Maddox's Mot. [Doc. 48].

before, coupled with the allegations regarding the customs or policies put in place by the supervisors. Id. at 1237 ("[W]e hold that Plaintiff sufficiently alleged that the supervisory Defendants violated Harper's Fourteenth Amendment rights based on their customs or policies.").

Similarly, in this case, Plaintiff alleges that Maddox "created and carried out" unconstitutional customs and practices "whereby medical emergencies were often not taken seriously, medical care was delayed, officers did not conduct thorough rounds to discover and report unresponsive inmates, officers failed to have access to proper equipment (radios, AEDs, Narcan, AMBU bags), and emergency interventions were not conducted immediately." Am. Compl. ¶¶ 224-25. In addition to allegations about Maddox's unconstitutional custom and practice of insufficient and delayed medical care, Plaintiff alleges at least seventeen prior incidents in the two years immediately preceding Collins's death where individuals have died at the Jail, "most of which occurred where officers discovered the inmates unresponsive and failed to provide sufficient medical treatment." Id. ¶¶ 98-113. Maddox acknowledges that one of these alleged prior incidents, Plaintiff's allegation of Ricky Lavoghn McCullum's death on July 19, 2023, is "relevant" to this case and involves a similar factual scenario whereby "jail staff could have subjectively known [McCullum] had a serious medical need

before finding the inmate unresponsive." Maddox's Mot. at 11.[16] Accordingly, the Court finds that Plaintiff has sufficiently alleged that Maddox violated Collins's Fourteenth Amendment rights based on her customs or policies.[17]

**2. Collins's constitutional rights were clearly established.**

In determining whether the unlawfulness of Maddox's actions was clearly established, "the salient question . . . is whether the state of the law" at the time of Collins's death gave Maddox "fair warning that [her] alleged treatment of [Collins] was unconstitutional." Hope v. Pelzer, 536 U.S. 730, 741 (2002).

> For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

---

[16] Whether the remaining alleged incidents support the notion that Maddox knew of any alleged constitutionally deficient medical care will be borne out in discovery.

[17] Plaintiff also offered allegations regarding another way to establish a "causal connection"—namely, the existence of "widespread abuse." Although the Court does not address those allegations substantively, the Court believes they satisfy the Rule 8 standards as well.

Id., 536 U.S. at 739 (citation and quotation omitted). A plaintiff can satisfy her burden as to the clearly-established prong of the qualified immunity framework by identifying

> a materially similar case decided at the time of the relevant conduct by the Supreme Court, the Eleventh Circuit, or the relevant state supreme court. Th[is] method looks at the relevant case law at the time of the alleged violation that would have made it obvious to the officer that his actions violated federal law. The prior case law need not be directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.

J W by & through Tammy Williams v. Birmingham Bd. of Educ., 904 F.3d 1248, 1259 (11th Cir. 2018) (citation and quotation omitted). A plaintiff can also satisfy his burden as to the clearly-established prong by identifying "a broader, clearly established principle that should govern the novel facts of the situation." Stalley, 124 F.4th at 1284.

There is abundant case law that clearly establishes that an inmate's constitutional right to minimally adequate medical care is violated when officers overseeing the inmate deny or delay care for serious medical needs. See, e.g., Bozeman, 422 F.3d at 1273 (denying motion for summary judgment, finding that there was an actionable claim for deliberate indifference where "the Officers, who knew Haggard was unconscious and not breathing and who then

failed for fourteen minutes to check Haggard's condition, call for medical assistance, administer CPR or do anything else to help."). Further,

> As for the second method of establishing a clear violation, Stalley points to the broad principle that the knowledge of the need for medical care and intentional refusal to provide that care has consistently been held to surpass negligence and constitute deliberate indifference. That principle has put all law-enforcement officials on notice that if they actually know about a condition that poses a substantial risk of serious harm and yet do nothing to address it, they violate the Constitution.

Stalley, 124 F.4th at 1286 (citation and quotation omitted).

Taking the allegations in the Amended Complaint as true, detention officers supervised by Maddox saw Collins collapse around 4:20 p.m. and laid motionless on the floor "in dire medical condition" and did not provide or call for medical assistance for over three hours until 7:39 p.m. Am. Compl. ¶¶ 40, 45, 49, 60. Further, Plaintiff alleges that the customs and practices causing the constitutional deficient medical care were the result of Maddox's supervision. See Am. Compl. ¶¶ 223-28; Brown, 906 F.2d at 671 (holding that a supervisor can be held liable for his subordinates' constitutional violations if he is on notice of widespread abuse, or when his improper custom or policy caused the violation). Accordingly, Plaintiff's Amended Complaint sufficiently alleges violations of clearly established law against Maddox.

### B. The Derivative State Law Claims Against Maddox Remain.

Maddox argues that the state law claims for wrongful death and estate claims (Counts VIII and IX), as well as the claim for punitive damages (Count X) should be dismissed because they are derivative of the federal deliberate indifference claim against Maddox, which Maddox contends is due to be dismissed. Maddox's Mot. at 16-17. Because the Court finds that Plaintiff's federal deliberate indifference claim against Maddox withstands Maddox's Motion to Dismiss, the Court rejects Maddox's derivative claim argument.

## V. CONCLUSION

For the reasons above, it is hereby **ORDERED** that Defendant Melody Maddox's Motion to Dismiss [Doc. 25] is **DENIED**, and Defendant A. Jimoh's Motion to Dismiss [Doc. 26] is **GRANTED**.

It is further **ORDERED** that the parties file their Joint Preliminary Report and Discovery Plan no later than thirty (30) days from the date of this Order and shall conduct the Rule 26(f) Early Planning Conference no later than sixteen (16) days from the date of this Order. See LR 16.1, 16.2, NDGa.

The Court also notes that Defendants have failed to file their Certificate of Interested Parties and, with respect to Arbor Health of DeKalb County, LLC, its corporate discourse statement in accordance with Local Rule 3.3. It is further

**ORDERED** that Defendants comply with Local Rule 3.3 no later than ten (10) days from the date of this Order.

**IT IS SO ORDERED** this 14th day of September, 2026.

Mark H. Cohen

MARK H. COHEN
United States District Judge